# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 17-0561V
Filed: April 30, 2019
PUBLISHED

| | |
|---|---|
| LORIN T. PRUETT,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH<br>AND HUMAN SERVICES,<br><br>      Respondent. | Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Renee J. Gentry*, Vaccine Injury Clinic, George Washington Univ. Law School, Washington, DC, for petitioner.
*Darryl R. Wishard*, U.S. Department of Justice, Washington, DC, for respondent.

## **DECISION AWARDING DAMAGES**[1]

**Dorsey**, Chief Special Master:

  On April 24, 2017, Lorin T. Pruett ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") he received on October 20, 2015. Petition at 5. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons discussed below, the

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

undersigned now finds that petitioner is entitled to compensation in the amount of $75,944.63.

### I.      Procedural History

Mr. Pruett filed his petition for compensation on April 24, 2017.  (ECF No. 1).  Two days later, he filed six medical record exhibits in support of his petition.  (ECF No. 7).  On February 4, 2017, Mr. Pruett filed several additional updated medical records exhibits.  (ECF No. 9).

On November 2, 2017, respondent filed his report pursuant to Vaccine Rule 4(c) conceding that petitioner was entitled to compensation.  The next day, November 3, 2017, the undersigned issued a ruling finding petitioner entitled to compensation.  (ECF No. 15).  A damages order was issued the same day.  (ECF No. 16).

On April 4, 2018, petitioner filed a status report stating that the parties were unable to informally resolve the damages in this case and requested a status conference.  (ECF No. 25).  On April 20, 2018, the staff attorney managing this case held a status conference to discuss the parties' concerns.  The parties explained that the issue of disagreement was on the appropriate amount to award petitioner for his pain and suffering.  After discussing several available options, the parties elected to file briefs on damages.  (ECF No. 26).  The parties have filed briefs discussing the damages issues in this case.  This case is now ripe for a determination regarding petitioner's pain and suffering and award of damages.

### II.     Factual History

On October 20, 2015, Mr. Pruett (age 57) received a flu vaccine in his left shoulder (non-dominant arm) at a walk-in appointment at the Kaiser Permanente ("KP") flu vaccination clinic at the KP Fair Oaks Medical Center in Fairfax County, Virginia.  Petitioner's Exhibit ("Pet. Ex.") 1 at 1; Pet. Ex. 5 at 1.  Mr. Pruett's medical history is significant for right shoulder pain for several years, but there is no mention of left shoulder pain in the records dating back to 2013.  Pet. Ex. 2 at 48.  Mr. Pruett's medical history does not otherwise appear to be contributory to his claim in this case.

In his affidavit, Mr. Pruett stated that by the time he came home from work on the evening of October 20, 2015, his arm was very sore.  Pet. Ex. 5 at 1.  He stated that he was:

> experiencing increasing pain centered in the humerus section of the arm where the deltoid meets the biceps/brachialis and radiating across the arm at that intersection.  The soreness in the upper arm continued that day and night, varying from mild to strong pain.  The pain slowly subsided to a 5-7 pain level during the week but again increased to a 9-10 pain level on October 23-25, 2015.  This pain pattern (alternating mild to strong pain) repeated itself again the following weekend of November 2, 2015.

Pet. Ex. 5 at 1.

On November 1, 2016, Mr. Pruett telephoned the KP 24-hour nurse about his left arm pain and to make an appointment with a physician. Pet. Ex. 5 at 2. The nurse suggested that Mr. Pruett use heat and ice to treat his pain, alternating the two methods until he was able to be seen by a physician. *Id*.

On November 2, 2015, Mr. Pruett presented to Dr. Al-Muhannad Al-Hammod at KP with complaints of left shoulder pain since receiving a flu vaccine on October 20, 2015. Pet. Ex. 2 at 62. Mr. Pruett reported that he thought the vaccine was given "too high" in his deltoid area. *Id*. He denied having any bruising or swelling but complained that "his left shoulder has been sore and certain movements send sharp pains down his arm." *Id*. Mr. Pruett stated that he had been taking Aleve for pain but that the medication was not helping. *Id*. On examination, Dr. Al-Hammod noted a full range of motion of the left shoulder, but that Mr. Pruett had some discomfort with range of motion, i.e., arm raises and lateral abduction. *Id*. An x-ray was ordered and petitioner was prescribed Meloxicam. Mr. Pruett was also provided with a handout for shoulder exercises and instructed return if there was no improvement within the next two weeks. *Id*.

On November 9, 2015, Mr. Pruett underwent an x-ray of his left shoulder. Pet. Ex. 1 at 5; Pet. Ex. 2 at 218. The results were normal. *Id*.

On November 18, 2015, Mr. Pruett was seen by Dr. Marc Kouyoumdjian, an orthopedist, for complaints of left arm pain for the past month. Pet. Ex. 2 at 64. Mr. Pruett reported that his left shoulder pain "began immediately after flu injection." *Id*. He described the pain as intermittent with specific pain with certain rotations of the arm. *Id*. Mr. Pruett complained that the pain sometimes radiated into his forearm and over his bicep muscle. *Id*. The physical exam demonstrated a mild impingement sign of the left shoulder with some limited range of motion and tenderness. *Id*. at 65. The assessment was left arm pain. *Id.* at 64. Dr. Kouyoumdjian noted "[u]nsure of cause of pain and association with flu vaccine. Will refer to physical medicine." *Id*.

On November 20, 2015, Mr. Pruett was seen by Dr. Allen Chiu, a physiatrist, for an evaluation. Pet. Ex. 2 at 68. Dr. Chiu noted that Mr. Pruett "[i]nsists that pain began after vaccine" and that it "has been present since he received his flu vaccine and has worsened." *Id*. On examination, Dr. Chiu noted normal strength of the left shoulder, but limited range of motion and impingement. *Id.* Dr. Chiu noted that while he did not know what was causing the left arm pain, Mr. Pruett's presentation suggested "possible rotator cuff impingement. He does have pain in his left shoulder with a Hawkins test." Dr. Chui further stated "[i]f all these tests are negative or do not clearly explain his symptoms, then he very well may have pain following a flu shot in which case I'm not sure what can be done for this besides pain management – I gave him tramadol for breakthrough pain since he reports that the pain level is 9/10 in intensity." *Id*. at 69. Dr. Chiu prescribed Tramadol and an MRI study. *Id*.

On November 24, 2015, Mr. Pruett underwent an MRI of his left shoulder. Pet. Ex. 2 at 220. The impression was mild tendinopathy of the rotator cuff without a full-thickness tear and mild AC joint hypertrophy. *Id*. On January 9, 2016, Mr. Pruett underwent another MRI, this time of his left upper arm. *Id*. at 222. The impression stated "1. No explanation for patient's symptoms. 2. Mild AC joint hypertrophy and edema at the AC joint. Trace physiologic subacromial/subdeltoid fluid." *Id*.

No medical records were filed for the time period between January 9, 2016 and June 18, 2016. However, in his affidavit, Mr. Pruett stated that from mid-January to March, the pain level of his left shoulder was in the same range as it was in January (5-7) and there was still pain down or across his arm depending on the position of his arm. Pet. Ex. 5 at 4-5. He stated that as of March 2, 2016, the pain was aggravated by lifting as light as 5-10 pounds. *Id*. at 5. During this time, Mr. Pruett was taking over-the-counter Naproxen, three times daily as well as topical pain relievers.[3] *Id*.

On June 18, 2016, Mr. Pruett presented to Dr. Hoang-Anh Dang for continued complaints of left arm pain. Pet. Ex. 2 at 77. Mr. Pruett denied any numbness or weakness. *Id*. at 86. He also complained of "left arm – ac [antecubital – front of the elbow region] and hypothenar discoloration/bluish hue with exertion" while brushing his teeth. *Id*. The record also noted "h/o chronic L arm pain." The physical exam showed normal range of motion, color, strength and sensation. *Id*. at 78. Mr. Pruett rated his pain level at a 4 out of 10. *Id*. at 80. The impression was transient arm discoloration of unclear etiology. *Id*. at 77-79. A doppler ultrasound was conducted and the results were normal. *Id*. at 91.

Mr. Pruett treated at Kaiser with Drs. Ergener and Kouyoumdjian (orthopedists) from July 2016 to November 2016. During these treatment visits, he did not report any issues or complaints related to his left shoulder. Pet. Ex. 2 at 93-96, 121-127, 130-132, 135, 162-163; Pet. Ex. 3 at 146-147. Mr. Pruett was seen in October and November 2017, but there is no mention of any left shoulder issues. Pet. Ex. 8.

On January 26, 2018, petitioner presented to, Dr. Spencer Tseng, to follow up on his left arm pain and pelvic pain. Pet. Ex. 8 at 27. On examination, it was noted that Mr. Pruett had crepitus on palpation on the muscular region of the left shoulder and mild tenderness. *Id*. at 28. He was instructed to "[w]ork on massage heat on the left deltoid region" and instructed to return in three weeks. *Id.* In email correspondence between petitioner and Dr. Tseng, Mr. Pruett inquired about the buildup of scar tissue around the vaccination site and what, treatment, would be appropriate for future medical expenses, as well as whether surgery was an option. Pet. Ex. 9 at 1-2. Dr. Tseng did not recommend surgery but stated that physical therapy and an ultrasound study may be helpful. *Id*. at 1.[4]

### III.    Party Contentions

Petitioner seeks the following award: (1) $944.63 for his past medical and incidental out-of-pocket expenses, (2) $40,000.00 for his past pain and suffering, (3) $8,000.00 per year for his life expectancy (20 years) adjusted to net present value (NDR: 2%) equaling $130,811.20, and (4) $1,600.00 for his related future medical

---

[3] Mr. Pruett stated that he did not take the prescribed Tramadol because the pain level was not as high as it had been and due to the side effects of the Tramadol. Pet. Ex. 5 at 4.

[4] No additional medical records have been filed.

expenses to treat his arm pain, for a total of $173,355.83.  Petitioner's Brief in Support of Damages ("Pet. Brief") at 10 (ECF No. 34).

In support of this amount of damages, petitioner asserts that his shoulder injury had a negative impact on his work and business and especially in the first six months of his injury, which was at the peak delivery period of his self-employed business, and he was greatly impeded in his ability to work.  Pet. Brief at 9.  Mr. Pruett describes that his injury "took a great physical and mental toll" on him.  In addition to work and activities of daily living, Mr. Pruett states that his main recreational activity, cycling, has also been negatively impacted by his injury.  He compares the facts in his case to those in three other decisions, *Desrosiers, Dhanoa, and Marino*[5] in which amounts from $75,000.00 to $85,000.00 was awarded for actual pain and suffering.  Pet. Brief at 4-6.  When providing the details regarding his pain and suffering, petitioner relies heavily on the information provided in his affidavit.  Pet. Ex. 5.

Respondent argues that petitioner should be awarded $60,000.00 as compensation for his actual pain and suffering.  Respondent's Brief on Damages ("Res. Brief") at 1 (ECF No. 35).  He maintains that "[p]etitioner's SIRVA was very mild, and he essentially recovered from it."  *Id.* at 11.  Comparing petitioner's facts to those in *Desrosiers, Dhanoa,* and *Marino*, respondent asserts "all three of these cases are factually distinguishable."  *Id.*  Instead, he compares petitioner's injury to the one suffered by the petitioner in another case in which $60,000.00 was awarded for actual pain and suffering, *Knauss*,[6] claiming petitioner's injury "was less severe than what existed in *Knauss.*"  Res. Brief at 13.

## IV.   Discussion and Analysis

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." § 15(a)(4).  Petitioner bears the burden of proof with respect to each element of compensation requested.  *Brewer v. Sec'y Health & Human Servs.*, No. 93-92V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).  Medical records are the most reliable evidence regarding a petitioner's medical condition and the effect it has on his daily life.  *Shapiro v. Sec'y Health & Human Servs.*, 101 Fed. Cl. 532, 537-38 (2011) ("[t]here is little doubt that the decisional law in the

---

[5] *Desrosiers v. Sec'y Health & Human Servs.*, No. 16-224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for pain and suffering and $336.20 in past unreimbursable medical expenses); *Dhanoa v. Sec'y Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $94,900.99 for pain and suffering and $862.15 in past unreimbursable medical expenses); *Marino v. Sec'y Health & Human Servs.*, No. 16-622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering and $88.88 in unreimbursable medical expenses).

[6] *Knauss v. Sec'y Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering and $170.00 in unreimbursable medical expenses).

vaccine area favors medical records created contemporaneously with the events they describe over subsequent recollections.")

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *See I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125 at *9 (Fed. Cl. Spec. Mstr. May 14, 2013), *originally issued* Apr. 19, 2013 ("*I.D.*") ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-172V, 1996 WL 300594 at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Compensation awarded pursuant to the Vaccine Act shall include "actual and projected pain and suffering and emotional distress from the vaccine-related injury . . . not to exceed $250,000." § 15(a)(4). In determining an award for pain and suffering and emotional distress, it is appropriate to consider the severity of injury and awareness and duration of suffering. *See I.D.*, 2013 WL 2448125 at *9-11(citing *McAllister v. Sec'y of Health & Human Servs.*, No. 91-1037V, 1993 WL 777030 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)). In evaluating these factors, the undersigned has reviewed the entire record, including medical records, affidavits submitted by petitioner and others, and hearing testimony.

The undersigned may also look to prior pain and suffering awards to aid in her resolution of the appropriate amount of compensation for pain and suffering this case. *See, e.g., Jane Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, the undersigned also may rely on her own experience adjudicating similar claims. *See Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, it must be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

In *Graves*, the Court rejected the special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. The Court noted that this constituted "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. At 590. Instead, the Court assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595.

### A. History of SIRVA Settlement and Proffer

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2019, 1,023 SIRVA cases have informally resolved[7] within the Special Processing Unit since its inception in July of 2014.[8] Of those cases, 602 resolved via the government's proffer on award of compensation, following a prior ruling that petitioner is entitled to compensation.[9] Additionally, 395 SPU SIRVA cases resolved via stipulated agreement of the parties without a prior ruling on entitlement.

Among the SPU SIRVA cases resolved via government proffer, awards have typically ranged from $77,000.00 to $125,000.00.[10] The median award is $100,000.00. In most instances, these awards are presented by the parties as a total agreed upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering.

Among SPU SIRVA cases resolved via stipulation, awards have typically ranged from $50,000.00 to $95,000.00.[11] The median award is $70,000.00. As with proffered cases, in most instances, stipulated awards are presented by the parties as a total agreed upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering. Unlike the proffered awards, which purportedly represent full compensation for all of petitioner's damages, stipulated awards also typically represent some degree of litigative risk negotiated by the parties.

### B. Prior Decisions Addressing SIRVA Damages

In addition to the extensive history of informal resolution, the undersigned has also issued 14 reasoned decisions as of the end of March of 2019 addressing the appropriate amount of compensation in prior SIRVA cases within the SPU.[12]

---

[7] Additionally, 31 claims alleging SIRVA have been dismissed within the SPU.

[8] In *Kim*, *infra*, and *Young, infra*, the undersigned previously described SPU SIRVA case resolutions through July 1, 2018.

[9] Additionally, there have been 16 prior cases in which petitioner was found to be entitled to compensation, but where damages were resolved via a stipulated agreement by the parties rather than government proffer.

[10] Typical range refers to cases within the second and third quartiles. Additional outlier awards also exist. The full range of awards spans from $25,000.00 to $1,845,047.00. Among the 16 SPU SIRVA cases resolved via stipulation following a finding of entitlement, awards range from $45,000.00 to $1,500,000.00 with a median award of $122,886.42. For these awards, the second and third quartiles range from $90,000.00 to $160,502.39.

[11] Typical range refers to cases within the second and third quartiles. Additional outlier awards also exist. The full range of awards spans from $5,000.00 to $509,552.31. Additionally, two stipulated awards were limited to annuities, the exact amounts of which were not determined at the time of judgment.

[12] An additional case, *Young v. Sec'y Health & Human Servs.*, No. 15-1241, cited by petitioner, was removed from the SPU due to the protracted nature of the damages phase of that case. In that case the undersigned awarded $100,000.00 in compensation for past pain and suffering and $2,293.15 for past

### i. Below-median awards limited to past pain and suffering

In six prior SPU cases, the undersigned has awarded compensation for pain and suffering limited to compensation for actual or past pain and suffering that has fallen below the amount of the median proffer discussed above. These awards ranged from $60,000.00 to $85,000.00.[13] These cases have all included injuries with a "good" prognosis, albeit in some instances with some residual pain. All of these cases had only mild to moderate limitations in range of motion and MRI imaging likewise showed only evidence of mild to moderate pathologies such as tendinosis, bursitis or edema. The duration of injury ranged from seven to 21 months and, on average, these petitioners saw between 11 and 12 months of pain.

Significant pain was reported in these cases for up to eight months. However, in most cases, these petitioners subjectively rated their pain as six or below on a ten-point scale. Only the petitioners in *Kim* and *Attig* reported pain at the upper end of the ten-point scale. Most of these petitioners pursued physical therapy for two months or less and none had any surgery. Only two (*Attig* and *Marino*) had cortisone injections. Several of these cases (*Knauss*, *Marino*, *Kim*, and *Dirksen*) delayed in seeking treatment. These delays ranged from about 42 days in *Kim* to over six months in *Marino*.

Two of the petitioners (*Marino* and *Desrosiers*) had significant lifestyle factors that contributed to their awards. In *Marino*, petitioner presented evidence that her SIRVA prevented her from her avid tennis hobby. In *Desrosiers*, petitioner presented evidence that her pregnancy and childbirth prevented her from immediately seeking full treatment of her injury.

### ii. Above-median awards limited to past pain and suffering

Additionally, in five prior SPU cases, the undersigned has awarded compensation limited to past pain and suffering falling above the median proffered

---

unreimbursable expenses. 2019 WL 664495 (Fed. Cl. Spec. Mstr. Jan. 22, 2019). A separate reasoned ruling addressed the amount awarded. 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019).

[13] These cases are: *Knauss v. Sec'y Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering and $170.00 in unreimbursable medical expenses); *Marino v. Sec'y Health & Human Servs.*, No. 16-622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering and $88.88 in unreimbursable medical expenses); *Attig v. Sec'y Health & Human Servs.,* No. 17-1029, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for pain and suffering and $1,386.97 in unreimbursable medical expenses); *Kim v. Sec'y Health & Human Servs.*, No. 17-418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for pain and suffering and $520.00 in unreimbursable medical expenses); *Desrosiers v. Sec'y Health & Human Servs.*, No. 16-224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for pain and suffering and $336.20 in past unreimbursable medical expenses); *Dirksen v. Sec'y Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for pain and suffering and $1,784.56 in unreimbursable medical expenses).

SIRVA award. These awards have ranged from $110,000.00 to $160,000.00.[14] Like those in the preceding group, prognosis was "good." However, as compared to those petitioners receiving a below-median award, these cases were characterized either by a longer duration of injury or by the need for surgical repair. Four out of five underwent some form of shoulder surgery while the fifth (*Cooper*) experienced two full years of pain and suffering, eight months of which were considered significant, while seeking extended conservative treatment. On the whole, MRI imaging in these cases also showed more significant findings. In four out of five cases, MRI imaging showed possible evidence of partial tearing of tendons.[15] No MRI study was performed in the *Cooper* case.

During treatment, each of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and all experienced moderate to severe limitations in range of motion. Moreover, these petitioners tended to seek treatment of their injuries more immediately. Time to first treatment ranged from five days to 43 days. Duration of physical therapy ranged from one to 24 months and three out of the five had cortisone injections.

### iii. Awards including compensation for both past and future pain and suffering

In three prior SPU SIRVA cases, the undersigned has awarded compensation for both past and future pain and suffering.[16] In two of those cases (*Hooper* and *Binette*),

---

[14] These cases are: *Cooper v. Sec'y Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $3,642.33 in unreimbursable medical expenses); *Knudson v. Sec'y Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $305.07 in unreimbursable medical expenses); *Collado v. Sec'y Health & Human Servs.*, No. 17-225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering and $772.53 in unreimbursable medical expenses); *Dobbins v. Sec'y Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering and $3,143.80 in unreimbursable medical expenses); *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for pain and suffering and $4,931.06 in unreimbursable medical expenses).

[15] In *Reed*, MRI showed edema in the infraspinatus tendon of the right shoulder with a possible tendon tear and a small bone bruise of the posterior humeral head. In *Dobbins*, MRI showed a full-thickness partial tear of the supraspinatus tendon extending to the bursal surface, bursal surface fraying and partial thickness tear of the tendon, tear of the posterior aspects of the inferior glenohumeral ligament, and moderate sized joint effusion with synovitis and possible small loose bodies. In *Collado*, MRI showed a partial bursal surface tear of the infraspinatus and of the supraspinatus. In Knudson, MRI showed mild longitudinally oriented partial-thickness tear of the infraspinatus tendon, mild supraspinatus and infraspinatus tendinopathy, small subcortical cysts and mild subcortical bone marrow edema over the posterior-superior-lateral aspect of the humeral head adjacent to the infraspinatus tendon insertion site, and minimal subacromial-subdeltoid bursitis.

[16] These cases are: *Dhanoa v. Sec'y Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering, $10,000.00 for projected pain and suffering for one year, and $862.15 in past unreimbursable medical expenses); *Binette v. Sec'y Health & Human Servs.*, No. 16-731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $130,000.00 for actual pain and suffering, $1,000.00 per year for a life expectancy of 57 years for

petitioners experienced moderate to severe limitations in range of motion and moderate to severe pain. The *Hooper* petitioner underwent surgery while in *Binette* petitioner was deemed not a candidate for surgery following an arthrogram. Despite significant physical therapy (and surgery in *Hooper*), medical opinion indicated that their disability would be permanent. In these two cases, petitioners were awarded above-median awards for actual pain and suffering as well as awards for projected pain and suffering for the duration of their life expectancies. In the third case (*Dhanoa*), petitioner's injury was less severe than in *Hooper* or *Binette*; however, petitioner had been actively treating just prior to the case becoming ripe for decision and her medical records reflected that she was still symptomatic despite a good prognosis. The undersigned awarded an amount below-median for actual pain and suffering, but, in light of the facts and circumstances of the case, also awarded one-year of projected pain and suffering.

### C. Determining Petitioner's Award of Pain and Suffering in This Case

In the experience of the undersigned, awareness of suffering is not typically a disputed issue in cases involving SIRVA. In this case, neither party has raised, nor is the undersigned aware of, any issue concerning petitioner's awareness of suffering and the undersigned finds that this matter is not in dispute. Thus, based on the circumstances of this case, the undersigned determines that petitioner had full awareness of his suffering.

#### i. Severity and Duration of the Injury

With respect to the severity of petitioner's injury, Mr. Pruett's affidavit provides a summary of his levels of pain throughout the duration of his injury. Mr. Pruett states that he "suffered high amounts of constant pain from the day he received his vaccination in late October 2015 to early January 2016, a period of about two and half months." Pet. Brief at 9. From January 2016 to February 2017, Mr. Pruett states that his pain subsided to a "manageable" level, but that he experienced "high levels of pain upon 'certain arm movements, repetitive arm motions, and when carrying heavier items (over 10 pounds) with [his] left arm." *Id*. at 9. During this time, Mr. Pruett states that he was managing his pain with NSAIDs and topical ointments. When he briefly stopped this course of treatment, his pain levels increased by 1-2 pain levels.[17] *Id*.

Mr. Pruett averred that over two and half years after his injury, he continues to experience weakness and 1-3 level pains in his left arm depending on his activity. Pet. Brief at 9; Pet. Ex. 10 at 3. He continues his daily course of NSAIDS and topical ointments to manage the pain caused by his shoulder injury. Pet. Ex. 10 at 2. In his

---

projected pain and suffering, and $7,101.98 for past unreimbursable medical expenses); and *Hooper v. Sec'y Health & Human Servs.*, No. 17-12V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $185,000.00 for actual pain and suffering, $1,500.00 per year for a life expectancy of 30 years for projected pain and suffering, $37,921.48 for lost wages).

[17] The pain scale petitioner references is a pain scale from 1-10 with 10 being the most severe level of pain.

brief, petitioner states "[a]fter conversations with his doctor about scar tissue, Petitioner believes that his recovery has 'plateaued,' and that he will live with his current pain and limitations on his 'injured arm's strength and stamina' for the rest of his life." *Id*. at 9. Mr. Pruett also "believes" that he will have to continue using the NSAIDS, topical ointments, and massages to manage his pain with the possibility of physical therapy in the future. Pet. Brief at 9. He states that while his pain has lessened since the initial injury, he is never pain free. *Id*.

The undersigned acknowledges and finds that Mr. Pruett suffered severe shoulder pain from the time he received the flu vaccination at issue in this case on October 20, 2015 to early January 2016 – a period of approximately two and half months. He first sought treatment approximately 12 days after his vaccination. Pet. Ex. 2 at 2. At that time, he had full range of motion of his shoulder and there was noted "discomfort" on examination (although no pain level rating was provided). In his November 20, 2015 appointment, Dr. Chiu, petitioner reported that his pain was at a 9/10 intensity. Pet. Ex. 2 at 69. On examination, Mr. Pruett exhibited a mild impingement sign of the left shoulder with some limited range of motion and tenderness. *Id*. An MRI showed mild tendinopathy of the rotator cuff without a full-thickness tear and mild AC joint hypertrophy. *Id*. at 220.

Although Mr. Pruett averred that he continued to experience some pain and limited range of motion of his left shoulder from mid-January 2016 to June 18, 2016, which he treated with over-the-counter medications and massages, he did not receive any formal treatment for his shoulder during this time, admitting that his pain levels were "manageable." Pet. Brief at 9. By June 2016, he had full range of motion of his left shoulder although he rated his pain level at a 4 out of 10. Pet. Ex. 2 at 80. From July 2017 to mid-January 2018, the medical records do not reflect any reports of shoulder pain or injury. Pet. Ex. 2 at 93-96, 121-127, 130-132, 135, 162-163; Pet. Ex. 3 at 146-147. Although in his most recent medical records, there is documentation of "mild crepitus on palpation on the muscular region of his left shoulder and mild tenderness," Mr. Pruett's physician did not document that there was scar tissue present in the left shoulder. Pet. Ex. 9 at 1-2. Surgery was not recommended although Dr. Tseng did suggest that physical therapy would be helpful. *Id*. The records do not reflect that Mr. Pruett received any steroid injections nor did he ever attend physical therapy.

### ii. Effect on Personal Life

Mr. Pruett argues that his shoulder injury had "a great negative impact on [his] work and business in the first 6 months when the pain was most severe, a medium impact in late 2016 to early 2017, and only a very minor impact today." Pet. Ex. 10 at 2. Mr. Pruett is self-employed and works in geographic information systems, primarily as a builder of software databases. *Id*. Mr. Pruett stated that he generally spends eight to twelve hours working at the computer during his busy season. Petitioner's injury occurred in October 2015, coinciding with his peak delivery period, and greatly impeded his ability to do his work in the first six months of his injury. *Id*. Although Mr. Pruett has made no claim for lost wages, he argued that his efforts to minimize the impact of his injury "took a great physical and mental toll" on him. Id. at 2-3.

In addition, Mr. Pruett stated that he enjoys cycling, and would previously ride up to 100 miles on his road bike during events. Pet. Ex. 10 at 2-3. Currently, the "baseline pain" in his left arm and shoulder aggravated when he rides for longer distances or when he rides more frequently. *Id*. He states that there is no aspect of his life that has not been impacted by his injury.

### iii. Past Pain and Suffering

In this case, petitioner's injury is less severe and of a shorter duration than those injuries which have warranted higher awards for pain and suffering. Indeed, petitioner's medical history closely aligns with those SIRVA cases described above which have received below-median awards.

In total, petitioner experienced eight months of documented pain and suffering; however, his records reflect that his pain improved significantly after about two and a half months. He experienced only mildly reduced range of motion and his MRI findings suggest only a mild condition. In his affidavit, petitioner described additional ongoing sequela, including an ongoing impact on his personal and work life, but these reports are not fully reflected in his medical records. Petitioner did not have any steroid injections and he did not undergo any physical therapy.

The above-described course of petitioner's condition is very similar to the prior *Kim*, *Marino*, and *Attig* cases, all of which were awarded damages below the median award for proffered SIRVA cases. In those cases, petitioners experienced from seven to 15 total months of pain and suffering. Moreover, like this case, the *Kim* and *Attig* petitioners reported one to three months of significant pain. All four cases included MRI findings consistent with a mild injury. Like this case, the *Kim* petitioner averred that her injury impacted her family life beyond what was reflected in the medical records. In all four cases, petitioners had a good prognosis.

In light of all of the above, and based on the record as a whole, the undersigned finds that $75,000.00 in compensation for past pain and suffering is reasonable and appropriate. As discussed below, the undersigned does not find sufficient evidence to support any award of future pain and suffering.

### iv. Future Pain and Suffering

In his brief, Mr. Pruett argues that he believes his recovery has "plateaued," and that he will live with his current pain and limitations for the rest of his life. Pet. Brief at 9. Because of this, Mr. Pruett argues that he is entitled to an award for future pain and suffering.

Petitioner bears the burden of proof with respect to each element of compensation requested and the medical records are the most reliable evidence of petitioner's condition. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-92V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996)*; Shapiro v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 532, 537-38 (2011). Based on Mr. Pruett's medical records and the lack of medical evidence demonstrating the likelihood that petitioner's shoulder

injury, more likely than not, is permanent or will extend into the future, the undersigned cannot make an award for petitioner's future pain and suffering.

### D. Award for Past Unreimbursed Expenses

Mr. Pruett has provided documentation of his past unreimbursable expenses. Pet. Ex. 22-23. On November 2, 2018, the parties filed a joint status report stating confirming respondent's proffer of $944.63 for petitioner's past unreimbursed expenses in this case. (ECF No. 63).

### E. Amount of the Award

In determining an award in this case, the undersigned does not rely on a single decision or case. Rather, the undersigned has reviewed the particular facts and circumstances in this case, giving due consideration to the circumstances and damages in other cases cited by the parties and other relevant cases, as well as her knowledge and experience adjudicating similar cases. For all the reasons discussed above, the undersigned finds that $75,000.00 represents a fair and appropriate amount of compensation for petitioner's past pain and suffering. In addition, the undersigned finds (with the agreement of the parties) that petitioner is entitled to compensation for $944.63 for his past unreimbursed expenses. The undersigned does not find sufficient evidence to support any award of future pain and suffering.

## V. Conclusion

In light of all of the above, the undersigned awards **petitioner a lump sum payment of $75,944.63,** (representing $75,000.00 for petitioner's past pain and suffering and $944.63 for unreimbursable medical expenses) **in the form of a check payable to petitioner, <u>Lorin T. Pruett</u>.** This amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a). *Id*.

The clerk of the court is directed to enter judgment in accordance with this decision.[18]

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u><br>
Nora Beth Dorsey<br>
Chief Special Master

---

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.